UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

26017 MICHIGAN, LLC and C&K
VENTURES, INC.,

|                | Plaintiffs              | Case Number 17-11860      |
| v.             | and counter-defendants, | Honorable David M. Lawson |

CITY OF INKSTER,

Defendant
and counter-claimant.

_____/

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT, GRANTING PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM, AND DISMISSING CASE

Plaintiff C&K Ventures, Inc. leases property owned by co-plaintiff 26017 Michigan, LLC located in the City of Inkster, where it operates a motel and party store. In February of last year, Inkster city officials conducting an "emergency inspection" shut down the party store (temporarily) and the motel (permanently), believing that the premises were riddled with building code violations and were operated so as to be a public nuisance. The plaintiffs sued the City alleging denial of their procedural and substantive due process rights and an uncompensated partial taking of their property. The City filed a counterclaim to abate alleged nuisance conditions on the plaintiffs' property. The plaintiffs have filed a motion to dismiss the City's counterclaim, contending that it is untimely and not properly before the Court. Inkster has filed a motion to dismiss the complaint in its entirety and a motion for summary judgment on its two-count counterclaim. The Court heard oral argument on November 22, 2017. Because the facts pleaded in the complaint and those undisputed facts evident from the public record establish that the plaintiffs cannot sustain any viable constitutional claims against the City for the closure of their motel, and because the plaintiffs have made no effort to

sustain the counts pleaded under various state laws on any other legal authority, the Court will grant Inkster's motion to dismiss. Because the City has failed to put forth any evidence to show that it is entitled to judgment as a matter of law on either count of its counterclaim, the Court will deny its motion for summary judgment. And because the City has not pleaded sufficient facts to describe any plausible claim for nuisance abatement, the Court will grant the plaintiffs' motion to dismiss the counterclaim.

## I. Facts and Proceedings

The underlying basic facts, which are taken from the complaint and the relevant documents referenced in it, appear to be largely undisputed.

### A. Inspection and Closure of the Michigan Motel

Plaintiff 26017 Michigan, LLC owns property located on Michigan Avenue in the City of Inkster. Plaintiff C&K Ventures, Inc. leases the property from the LLC entity and, until February 2017, operated a motel on the premises, known as the "Michigan Motel." C&K also operates a store known as the "25 Hour Party Store" on the same property. The motel was built in 1957 and sold to C&K in 2001. Although not alleged in the complaint, it appears to be undisputed that in 2011, C&K sold the property including the buildings to 26017 Michigan, LLC, and the LLC entity then began to lease back the buildings to C&K, which continued to operate the businesses. The motel was inspected by the fire department each year that it was in operation, and any violations noted during those inspections were fixed promptly.

On February 27, 2017, the Inkster city police department, acting in concert with other police agencies, descended on the motel purportedly based on an urgent need to conduct a health and safety inspection of the premises. Based on various health and safety violations revealed during the

inspection, police placed padlocks on all of the motel rooms. The City later sent the plaintiffs a letter detailing the violations observed. However, the City did not provide any warning of the inspection, no warrant was issued for seizure of the motel property, and the City did not issue any notice of violation or conduct any hearing regarding any purported nuisance conditions or ordinance violations at the property, before shuttering the motel.

The party store also briefly was shut down during the inspection based on the supposition of City officials that it did not have a "certificate of compliance" issued by the City for operation of the business; however, after a record search disclosed that the store did have a valid certificate, the store was allowed to reopen.

The letter produced by the City's building official, Ralph Welton, states that the inspection was conducted based on a complaint by the City's Fire Marshal. A report stated that the inspection included 23 guest rooms and three mechanical spaces at the motel, which occupies two adjacent buildings. The report noted the following safety hazards and building code violations: (1) overloaded electrical outlets (14 units); (2) illegal or improper wiring and exposed outlets or electrical fixtures (11 units); (3) broken, damaged, or boarded up exterior windows and doors (14 units); (4) missing or non-functional smoke and carbon-monoxide detectors (nine units); (5) obstructed or nonexistent avenues for emergency egress (four units); and (6) insufficient or blocked fresh air ventilation (two units).

The report noted that several improperly wired and ventilated water heaters and laundry appliances were found in the mechanical rooms, and there were insufficient clearances or "improper storage" around those appliances. The report also noted several instances of illegal or dangerous appliances installed in several units and numerous units with water damage or other damage to

floors, walls, and interior doors, as well as several units with holes or open passageways into adjoining units and the attic above the rooms. The inspectors noted that they could not even enter Unit 26 because of what appeared to be a severe "hoarding" issue with the occupant, which among other things made the entry door impossible to open.

Finally, the report noted that there were no fire-rated walls between any of the units; an attic space that spanned multiple rooms was open and not obstructed by any fire or smoke barriers; and single residential furnace units were used to heat multiple rooms (up to ten each), which posed a violation of the building code since it could allow airborne diseases to spread between units and could allow fire and smoke to spread without a proper smoke or fire barrier.

It appears to be undisputed that after the inspection, the City's officials or police placed padlocks on all of the guest units of the motel, and the motel has not been operated and no guests have resided there since February 27, 2017.

### B. State Court Criminal Proceedings

In their counter-claim, the City alleged, and the plaintiffs do not appear to dispute, that the plaintiff entities were charged with numerous misdemeanor counts resulting from the building code violations and other illegal conduct in the operation of the motel. On August 4, 2017, the plaintiffs jointly pleaded guilty in the City of Inkster's Twenty-Second District Court to (1) one count of violating Inkster City Ordinance § 150.237 (Failure to Obtain a Certificate of Compliance); (2) one count of violating City Ordinance § 94.25 (Trash, Debris & Litter); and (3) one count of violating City Ordinance § 156.51(B) (Blight). Plaintiff C&K Ventures, Inc. also pleaded guilty to: (1) 13 counts of violating City Ordinance § 93.31 (Improper Motel Registration); and (2) five counts of violating City Ordinance § 118.03 (30 Day Extended Stay Ordinance).

### C. Consent Judgment

The City included extensive allusions in its pleadings and briefing to a 2011 Consent Judgment entered in a previous civil action for nuisance brought against C&K Ventures, Inc., before it sold the property to the LLC entity and stepped back into the role of lessor and operator of the motel and party store businesses. However, the City apparently does not dispute the plaintiffs' assertion that the Consent Judgment had a sunset date of three years after it was entered, and it only cites the substantive provisions of the Consent Judgment as proof that the plaintiffs had engaged in nuisance-causing conduct in the past that led to the civil suit.

### D. Police Calls Since February 27, 2017

The City admits in its counter-claim that "[t]he Michigan Motel has remained closed since [February 27, 2017]." However, the City asserts that since that date, City police have "made no less than 32 police runs to the property." The City attached to its counter-claim a report (Exhibit A) that states the dates of what presumably were some or all of those police dispatches. It also furnished a "summary" of 45 police reports from calls logged to the vicinity of 26017 Michigan Avenue. That summary is discussed in detail below.

### E. Plaintiffs' Permit Application

On October 13, 2017, as directed by the Court, the City sent a letter to the plaintiffs explaining its position that the motel would be allowed to reopen if the plaintiffs make repairs to the structure addressing all of the items identified in the February 27, 2017 inspection report, including applying and paying for all required permits. The City noted that all repairs would need to conform to the applicable sections of the 2015 Michigan Rehab Code and other applicable sections of the Mechanical and Plumbing Code, and, in particular, that the building would be "required to have a

fire break [at least in the attic]." The City also stated, as the City's building permit official previously had informed the plaintiffs, that the City's building department "can work with [the plans] provided we have a comprehensive cover sheet," which would need to include, among other things, a narrative section stating the codes being utilized and the means by which compliance would be achieved for each of the defects identified by the City's inspectors.

## F. The Lawsuit

The plaintiffs filed their complaint in the Wayne County, Michigan circuit court on June 9, 2017. The complaint pleaded nine substantive counts, which were captioned as follows: "taking / deprivation of property" (Count I); "inverse condemnation" (Count II); "violations of the 2012 Michigan Building Code" (Count III); "violations of MCL 600.2940" (actions to abate nuisance) (Count IV); "violations of the Inkster Zoning Ordinance" (Counts V and VI); "procedural due process violations" (Count VII); "substantive due process violations" (Count VIII); and "selective enforcement" (Count IX). Count X of the complaint stated a non-substantive demand for declaratory and injunctive relief premised on the substantive claims pleaded in Counts I through IX. Although Counts III through VI were captioned as violations of various state statutes, in substance those claims plead that the City failed to follow the procedural requirements of the applicable local ordinances and state statutes before initiating the inspection and resulting closure of the motel. The City removed the case to this Court on June 12, 2017, citing the Court's federal question jurisdiction.

On August 21, 2017, the City of Inkster filed a counter-claim for nuisance abatement which pleaded two counts under the authority of Michigan Compiled Laws § 600.3801 (Count I) and Inkster City Ordinance § 95.01 (Count II). In Count I the City alleged that the property is a nuisance

because of its ongoing use for criminal activities enumerated in the statute. In Count II the City asserted that the property is a nuisance due to the dangerous and unsanitary conditions cited in the February 27, 2017 inspection report.

The City has moved to dismiss all counts of the complaint. The plaintiffs have moved to dismiss the counterclaim.

## II. Defendant's Motion to Dismiss

### A. Jurisdiction

The City argues the plaintiffs have not pleaded viable claims, and all of them must be dismissed. It invokes Federal Rule of Civil Procedure 12(b)(6), and leads off with the argument that the plaintiffs lack standing to sue because they have not obtained a certificate of compliance to operate the business. The City confounds that argument with the contention that the plaintiffs' claims are not ripe for adjudication. Both of those justiciability issues implicate the Court's subject matter jurisdiction, as federal courts may "hear[] [only] actual cases and controversies," *Miller v. City of Wickliffe*, 852 F.3d 497, 502-03 (6th Cir. 2017) (citing U.S. Const. art. III, § 2, cl. 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), and are more properly raised under Rule 12(b)(1).

The City's argument that the plaintiffs have not alleged sufficient facts to establish jurisdiction amounts to a facial attack under Rule 12(b)(1), which means that "the court takes the allegations of the complaint as true" on its jurisdictional facts. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). For standing, the Court must assess those allegations to determine if the plaintiffs have alleged the "three elements that serve as its irreducible minimum," which consist of "an injury in fact — an invasion of a legally protected interest," "causation — i.e., that [their] injury

is fairly traceable to the challenged action of the defendant," and "that a favorable decision could redress the injury." *Miller*, 852 F.3d at 502-03 (citing *Lujan*, 504 U.S. at 560).

"'At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice' to establish standing." *Christian County Clerk ex rel. Kem v. Mortgage Electronic Registration Systems, Inc.*, 515 F. App'x 451, 454 (6th Cir. 2013) (quoting *Lujan*, 504 U.S. at 561). "[W]hen the *Lujan* Court used the phrase 'legally protected interest' as an element of injury-in-fact, it made clear it was referring only to a 'cognizable interest,' and the Court 'did not mean to suggest a return to the old "legal right" theory of standing rejected in *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150 (1970).'" *Ibid.* (quoting *Parker v. District of Columbia*, 478 F.3d 370, 371 (D.C. Cir. 2007), *aff'd sub nom.*, *District of Columbia v. Heller*, 554 U.S. 570 (2008) (quotation marks omitted)).

Ripeness, on the other hand, "is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *National Park Hospitality Association v. Department of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-149 (1967)). "Determining whether administrative action is ripe for judicial review requires us to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* at 808.

The plaintiffs have pleaded sufficient facts to show that they suffered a concrete and particularized injury fairly traceable to the City's conduct when City officials shuttered their motel

as a result of the purported building code violations.  The absence of a certificate of compliance is irrelevant to this point, because they need not establish that they had any "legal right" to operate the business in order to pass the standing threshold.  The undisputed fact that the City padlocked the plaintiffs' premises and excluded them from entering or using it is sufficient ground to support the Court's jurisdiction to inquire whether that action was lawful and supported by any rational government concern.  "'As the Supreme Court clarified in *Data Processing*, a plaintiff need not have a 'legal right,' or a right protected by the law of property, contract, tort, or statute, to suffer injury-in-fact.'" *Christian County Clerk ex rel. Kem v. Mortgage Electronic Registration Systems, Inc.*, 515 F. App'x 451, 454 (6th Cir. 2013) (quoting *Club Italia Soccer & Sports Org. v. Charter Township of Shelby*, 470 F.3d 286, 292 (6th Cir. 2006)).

The controversy is ripe, because it is undisputed that the exclusion of the plaintiffs from their motel premises was an accomplished fact on February 27, 2017, and the City has taken the position since then that, not only is no compensation due to the plaintiffs for its invasion of their property, but also that the plaintiffs ought to pay the City to raze the structure that was seized.  *See Horne v. Department of Agriculture*, 569 U.S. 513, ---, 133 S. Ct. 2053, 2062 (2013) ("[A] Fifth Amendment claim is premature until it is clear that the Government has both taken property and denied just compensation.").

The claims raised in the complaint are not subject to dismissal for lack of standing.


### B.  Merits

The City raises a host of other arguments under Rule 12(b)(6) that attack the merits of the plaintiffs' claims.  The absence of a certificate of compliance is more appropriately considered here.

The City also contends that it is immune from tort liability on any of the theories pleaded in the complaint because when it shut down the motel for numerous building code violations it was "engaged in the exercise or discharge of a governmental function," Mich. Comp. Laws § 691.1407(1); it is not liable for any "taking" of property because enforcement of the building code was a valid exercise of its municipal "police power"; it is immune from claims of violation of its own Building Code in Count III because enforcement of the Code was an exercise of a governmental function; it cannot be sued for "nuisance" under state law because nuisance is a cause of action in tort and the claim is subject to the same immunity for discharge of a government function; and the claims in Counts V and VI are barred because a municipality cannot be sued for failing to enforce its own ordinances.

The standards under Rule 12(b)(6) are well known to the parties: the purpose of the motion is to allow a defendant to test whether, as a matter of law, the plaintiffs are entitled to legal relief if all the factual allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The complaint is viewed in the light most favorable to the plaintiffs, the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive the motion, the plaintiffs "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, and matters of public record, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Solerne, N.A.*, 534 U.S. 596 (2002). However, beyond that, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

## 1. Takings

In Counts I and II, the plaintiffs allege that the City has taken their property without just compensation when it padlocked the motel for building code violations and refused to let it reopen. There are no citations of constitutional or statutory provisions in the complaint, and it is not clear from their brief that the plaintiffs rely on the Fifth Amendment to support their taking and inverse condemnation claims. It appears, however, that the thrust of the plaintiffs' main grievance is that the City has deprived them of the use of their property, which fairly invokes that constitutional clause. "The Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.'" *Murr v. Wisconsin*, --- U.S. ---, 137 S. Ct. 1933, 1942 (2017). And inverse condemnation is simply the other side of that same coin. *San Diego Gas & Elec. Co. v. City of San Diego*, 450 U.S. 621, 638 n.2 (1981) (observing that "[t]he phrase 'inverse condemnation' generally describes a cause of action against a government defendant in which a

landowner may recover just compensation for a 'taking' of his property under the Fifth Amendment, even though formal condemnation proceedings in exercise of the sovereign's power of eminent domain have not been instituted by the government entity").

Although the plaintiffs sufficiently alleged an "injury" to their property rights, the facts evident from the pleadings, together with one crucial fact present in the public record of which the Court may take notice, establish that the plaintiffs did not suffer any economic impact or deprivation of any distinct investment-backed expectation for the beneficial use of their property when their illegally-operated motel was shuttered by the City.

The plaintiffs have not disputed the fact that they never obtained a certificate of compliance for their motel operation, which is mandated by the City's zoning ordinance. *See* Inkster City Ordinance § 150.237(A) ("No person shall lease, rent or cause to be occupied a rental dwelling or rental unit unless there is a valid certificate of compliance issued by the Building Department in the name of the owner/responsible local agent and issued for the specific rental dwelling and rental unit."). Such a certificate may be issued only where the rental owner has submitted a proper application to the Building Department and an inspection confirms that the "*dwelling and rental unit complies with the provisions of this code.*" *Ibid.* (emphasis added). The Court may take notice of the fact that the plaintiffs never made an application for a certificate of compliance (which is evident by the absence of an application in the public record), and no such certificate ever was issued for the motel. Because the plaintiffs had no legal right to operate a motel within the City, the City's decision to shut down the illegally-operated premises, and to secure them in order to prevent the hazards to life from threatening the residents of the motel, did not injure any legitimate expectation of the profitable use of the property.

Moreover, it is well established that "no individual has a right to use his property so as to create a nuisance or otherwise harm others," and that "the State has not 'taken' anything when it asserts its power to enjoin the nuisance-like activity." *Keystone Bituminous Coal Association v. DeBenedictis*, 480 U.S. 470, 492 n.20 (1987). The plaintiffs here do not dispute the numerous hazards to health and life that existed (and perhaps still exist) on their motel premises, which certainly suffice to establish that the property — at least when it was occupied before February 27, 2017 — constituted a nuisance as defined under the City's zoning code.

Because the complaint contains no allegations of fact that establish that the City has taken the plaintiffs' property, either formally or informally, without just compensation, Counts I and II fail to state cognizable claims.

## 2. Due Process

In Counts VII and VIII, the plaintiffs allege that the City's actions deprived them of their right to due process of law. As with the takings counts, there is no reference in the complaint to the federal Constitution. But the plaintiffs' response brief plainly invokes cases decided under the Fourteenth Amendment.

In order to establish a procedural due process violation, the plaintiffs must show that they (1) had a life, liberty, or property interest protected by the Constitution; (2) were deprived of that interest by a state actor; and (3) were not afforded timely and adequate process under law. *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009). "Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (quoting

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (quotations omitted)). "The right to procedural due process requires that when a state seeks to terminate a protected interest it must afford notice and opportunity for hearing appropriate to the nature of the case." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 296 (6th Cir. 2006) (quotations and citations omitted). The Sixth Circuit has explained that "the fundamental requirement of procedural due process is that an individual be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Morrison v. Warren*, 375 F.3d 468, 475 (6th Cir. 2004) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

The Sixth Circuit has "has recognized two types of substantive due process violations: (1) official acts that are unreasonable and arbitrary and 'may not take place no matter what procedural protections accompany them,' and (2) official conduct that 'shocks the conscience.'" *Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994) (quoting *Wilson v. Beebe*, 770 F.2d 578, 586 (6th Cir. 1985) (en banc)). "The touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (citations and quotations omitted here and throughout the following paragraph).

"[T]o sustain a substantive due process claim [challenging a state entity's] administrative action, a plaintiff must show that the state administrative agency has been guilty of arbitrary and capricious action in the strict sense, meaning that there is no rational basis for the administrative decision." *Brody v. City of Mason*, 250 F.3d 432, 438 (6th Cir. 2001). "This requires a very strong showing." *Ibid.* "The administrative action will withstand substantive due process attack unless it

is not supportable on any rational basis or is willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992). "Government actions that do not affect fundamental rights or liberty interests and do not involve suspect classifications will be upheld if it they are rationally related to a legitimate state interest." *Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000).

The complaint does not state a claim for violation of the plaintiffs' procedural or substantive rights under the Due Process Clause.

### a. Procedural Due Process

The plaintiffs cannot establish a deprivation of their rights to procedural due process, because they cannot pass the threshold requirement of showing that the City's shuttering of the motel injured any due process-cognizable property interest of theirs. "'Procedural and substantive due process claims are examined under a two-part analysis. First, the Court must determine whether the interest at stake is a protected liberty or property interest under the Fourteenth Amendment. Only after identifying such a right [does the Court] continue to consider whether the deprivation of that interest contravened the notions of due process' under the Fourteenth Amendment." *Puckett v. Lexington-Fayette Urban County Gov't*, 833 F.3d 590, 604-05 (6th Cir. 2016) (citing *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001)). In a case involving an exercise of zoning authority over real property, the Court must "look to state law to determine whether there is a recognized property interest; specifically, [it must] consider whether the plaintiff had a 'legitimate claim of entitlement' or a 'justifiable expectation' to rely on a zoning authorization." *Paterek v. Village of Armada*, 801 F.3d 630, 648 (6th Cir. 2015)). The plaintiffs concede that they had no legal right to operate a motel without the required certificate of compliance. With that concession, they admit that

the essence of their procedural due process claim — that they were deprived of a legally protected interest in their property — disappears. Under those circumstances, the City's abrupt closure of the premises without notice or a hearing did not trench upon any right of the plaintiffs protected by the Due Process Clause.

The various allegations in Counts III through VI — violations of the building code, statutory nuisance abatement procedures, and the city zoning ordinances — even coupled with the contention that the inspection and closure were carried out by officials who acted beyond the scope of their nominal authority, and that certain procedural steps mandated under state law were ignored by the City before the closure was effected, do not suffice to sustain a due process claim where no constitutionally cognizable property interest was injured. "There is not a violation of due process every time [a] government entity violates its own rules. Such action may constitute a breach of contract or violation of state law, but unless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation." *Levitt v. University of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985); *see also Doe v. University of Cincinnati*, 173 F. Supp. 3d 586, 603 (S.D. Ohio 2016) ("[A]n allegation that the [administrative entity] violated its own policies and procedures does not state a claim for a due process violation." (citing *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 569 (6th Cir. 2011); *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir. 1987)).

The plaintiffs also cannot make out any plausible claim that the City unreasonably has withheld approval of their proposals to rehabilitate and reopen the property, where the complaint does not plead any facts to show that the plaintiffs ever submitted to the City a properly supported application for the necessary permits to make the repairs. It is evident from the record developed

to date in this litigation that the plaintiffs never have submitted plans that included the required code compliance narrative which the City advised them would be needed, and there certainly is no such allegation in the complaint). *See* Def.'s Reply [dkt. #31], Ex. B, Letter dated Oct. 13, 2017 (Pg ID 1271). The plaintiffs have not cited any authority for their position that the City cannot require them to make the property compliant with the current building code before issuing building permits for repairs or a certificate of compliance. Moreover, that contention baldly contradicts the broad authority granted under the applicable sections of the Code, which allow building officials to require that all health and safety hazards be eliminated in the course of any repair or alteration of a premises. 2012 Mich. Building Code § 3401.4.1 ("Materials already in use in a building in compliance with requirements or approvals in effect at the time of their erection or installation shall be permitted to remain in use *unless determined by the building official to be unsafe under section 116 [of this code]*."); *id.* § 116.1 ("Structures or existing equipment that are or hereafter become unsafe, unsanitary or deficient because of inadequate means of egress facilities, inadequate light and ventilation, or which constitute a fire hazard, shall be deemed an unsafe condition."); *ibid.* ("Unsafe structures shall be taken down and removed or made safe, as the building official deems necessary and as provided for in this section."); *id.* § 3401.4.2 ("Like materials shall be permitted for repairs and alterations, *provided no hazard to life, health or property is created*."); *id.* § 3401.5 ("The building official *shall have the authority to require the elimination of conditions deemed dangerous*.") (emphases added).

Because the plaintiffs never properly completed the process of applying for a permit to make repairs, they cannot establish plausibly that the City acted unreasonably in refusing to allow them to commence repairs or to allow them to reopen the motel.

b. Substantive Due Process

The plaintiffs have failed to plead any facts to sustain their substantive due process claim, because it plainly was not arbitrary or capricious for the City to act to close down an illegally operated motel that was host to serious health and safety risks for the persons residing there. "'[T]o sustain a substantive due process claim in the context of zoning administrative action, a plaintiff must show that the state administrative agency has been guilty of arbitrary and capricious action in the strict sense, meaning that there is no rational basis for the administrative decision.'" *Systematic Recycling LLC v. City of Detroit*, 635 F. App'x 175, 182 (6th Cir. 2015) (quoting *Brody v. City of Mason*, 250 F.3d 432, 438 (6th Cir. 2001) (quotation marks omitted)). The federal courts "will not 'interfere with local zoning decisions unless the locality's action has no foundation in reason and is a mere arbitrary or irrational exercise of power.'" *Paterek*, 801 F.3d at 648 (quoting *Warren v. City of Athens*, 411 F.3d 697, 707 (6th Cir. 2005)). Enforcing a zoning ordinance prohibiting an illegal operation on the plaintiffs' property does not amount to an arbitrary injury to property. *See Systematic Recycling*, 635 F. App'x at 183 ("Detroit's decision not to renew the [Host Community Agreement] was not unconstitutionally arbitrary; it was predicated upon suspicion that the HCA had been obtained through bribery. And because the existence of an HCA was a predicate for the continued vitality of the conditional land use grant, Detroit did not act capriciously in revoking the special land use permit either.").

Moreover, the plaintiffs cannot establish that they were deprived of any present substantive interest in reopening the motel, because they have not alleged that they ever properly sought permission to make repairs or applied for the required certificate of compliance that would be needed for the business to operate. *C.f. Paterek v. Village of Armada*, 801 F.3d 630, 648 (6th Cir.

2015) ("[The plaintiffs] had a legitimate claim of entitlement to the workshop [Certificate of Occupancy], *so long as the workshop passed the Village's inspection*." (emphasis added)).

Although the plaintiffs have standing to assert their due process claims, they have not alleged facts in Counts VII or VIII that demonstrate claims for which relief can be granted.

### 3. Selective Enforcement

The plaintiffs allege in Count IX that the City singled them out when it used its ordinances and Michigan statutes to padlock the motel.

To sustain a claim for selective enforcement, the plaintiff must plead the following elements:

First, [the state actor] must single out a person belonging to an identifiable group, such as . . . a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, he must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 394-95 (6th Cir. 2016) (quoting *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997)). The plaintiffs have not alleged any of these elements in their complaint.

Some selective prosecution claims can be addressed by Equal Protection Clause jurisprudence. *Whren v. United States*, 517 U.S. 806, 813 (1996) (noting that "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause"). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment . . . burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Bible Believers v. Wayne County*, 805 F.3d 228, 256 (6th Cir. 2015) (quoting *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)).

The plaintiffs have not alleged that the City's action burdened any fundamental right; nor have they suggested that they are members of a suspect class, or any class for that matter. But they need not plead class membership to sustain an equal protection, as the Supreme Court has recognized that the Equal Protection Clause applies as well to a "class of one." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). If the plaintiffs can demonstrate that they "ha[ve] been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," then they have stated an Equal Protection claim.

That is no easy task, however. "[T]here is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary." *Stemmler*, 126 F.3d at 873. And absent the deprivation of a fundamental right or membership in a suspect class, "[i]f there is any reasonably conceivable state of facts that could provide a rational basis for the state's conduct, then the state has not violated the constitution." *Systematic Recycling*, 635 F. App'x at 181 (citations and quotations marks omitted). In the Sixth Circuit, "a 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negativing every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Ibid.*

The plaintiffs have not pleaded facts that support either proposition. The City's decision to shutter the motel plainly was supported by a rational concern to foreclose the hazards to life and health that persisted there before February 27, 2017. The plaintiffs, after all, pleaded guilty to many of the building code violations, including operating the motel without a certificate of compliance.

And there are no facts pleaded in the complaint that would permit an inference of animus or ill will. Count IX, therefore, fails to state a viable claim for relief.

### 4.  State Law Counts

The City argues that it is immune from the claims in Counts III through VI of the complaint alleging violations of the Michigan Building Code, the state statute governing nuisance abatements, and the local ordinances.  The plaintiffs take the position in their responsive briefing that the allegations in those counts were not intended to assert any free-standing causes of action under state law, but were intended only to supply factual support for their claims that they were denied any meaningful notice or opportunity to be heard before the closure of the motel.  However, as noted above, mere allegations of a municipality's failure to follow procedures mandated under state law will not suffice to sustain a constitutional due process claim.  The plaintiffs have not made any effort to show that they have any other viable cause of action under any of the state or local laws cited in those counts, and therefore they will be dismissed.  With that disposition, the Court need not address the City's governmental immunity argument.

### III.  Defendant's Motion for Summary Judgment

The City filed a two-count counterclaim to shut down the motel permanently under state law and its local ordinance.  And it has moved for summary judgment, contending that the motel continues to constitute a nuisance that should be abated.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the district

court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

When the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden. *Vance v. Latimer*, 648 F. Supp. 2d 914, 919 (E.D. Mich. 2009); *see also Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992); *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense"). In his commentary on affirmative motions for summary judgment, Judge William Schwarzer explains:

> When the moving party bears the burden of persuasion on the issue at trial, its showing must sustain that burden as well as demonstrate the absence of a genuine dispute. Thus, it must satisfy both the initial burden of production on the summary judgment motion — by showing that no genuine dispute exists as to any material fact — and the ultimate burden of persuasion on the claim — by showing that it would be entitled to a directed verdict at trial.

William W. Schwarzer, et al., The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 477-78 (1992) (footnote omitted).

The City argues that it is entitled to judgment as a matter of law on its counter-claim for nuisance abatement because (1) the plaintiffs' joint entry into a consent judgment in a 2011 civil

case in state court for nuisance abatement affirmatively establishes that a nuisance was present at the property then, and plaintiff 26017 Michigan, LLC, as a subsequent purchaser of the motel, acquired the property subject to the terms of that consent judgment; (2) on August 4, 2017, the plaintiffs also pleaded guilty to failing to obtain a certificate of compliance from the City before operating the motel, allowing trash, debris, or litter to accumulate on the premises, allowing "blight" conditions to exist at the property, violating the City's ordinance requiring a motel owner to keep an accurate registry of guests (thirteen counts), and violating the City's ordinance prohibiting a motel from permitting guests to stay more than 30 days (five counts); and (3) the plaintiffs' admissions in the consent judgment and their guilty pleas, along with the extensive report of a City inspector noting numerous building code violations at the property during the February 27, 2017 inspection, all establish beyond dispute that the plaintiffs have violated the City's nuisance ordinance and that the City should be awarded injunctive relief and costs for abatement of the nuisance.

The plaintiffs respond that the City has failed to establish that there is any ongoing nuisance condition at the property, and that it relies entirely on past conduct which has ceased and presently cannot be resumed, due to the closure of the property. The plaintiffs contend that (1) the consent judgment had a sunset date of three years from its execution in 2011, and the City has not put forth any evidence that the consent judgment is still in force, or that the plaintiffs ever violated it when it was in force; (2) the debris on the property has been cleaned up and there are no outdoor conditions that would constitute nuisance or blight; and (3) the operation of the motel without a certificate of compliance ceased on February 27, 2017, when the City padlocked all of the units of the motel, and nobody has resided in the motel since then, pending the plaintiffs' efforts to come to

an agreement with the City to make repairs and bring the motel into compliance so it can reopen.

Michigan's nuisance abatement statute defines "nuisance" to include a building that is used for prostitution, gambling, manufacturing or distributing controlled substances, manufacturing or distributing bootleg liquor, hosting dog fights, facilitating human trafficking, or facilitating armed violence. Mich. Comp. Laws § 600.3801(1). The municipality prosecuting the nuisance need not prove that the nuisance was ongoing at the time of the hearing, or even when the complaint was filed, as long as "the complaint is filed within 90 days after any act, any violation, or the existence of a condition described in section 3801(1) as a nuisance." Mich. Comp. Laws § 600.3815(3).

The City of Inkster's nuisance ordinance defines the term somewhat differently to include whatever constituted a "public nuisance at common law," overcrowded dwellings, "whatever is unwholesome," "whatever is conducive to the harboring of insects, vermin, rats or rodents," and "any yard or area housing . . . waste . . . [or] rubbish . . . [that] is offensive to the general public." Inkster City Ordinance § 95.01. A variety of city officials are authorized to formally complain about a nuisance and bring an abatement action in the state circuit court. *Id.* § 95.03.

The City has not offered facts that establish conclusively that the plaintiffs (counter-defendants) are maintaining a continuing nuisance, or that one existed on the property after the City shuttered the motel in February 2017. The City may not rely on the 90-day grace period, since it did not file its counterclaim until August 2017.

### A. Dangerous Building

The City's extensive allusions in its counter-complaint and summary judgment briefing to the 2011 Consent Judgment and the February 27, 2017 inspection report do not suffice to establish

that any "nuisance" condition relating to health and safety hazards presently exists at the property, or existed at any point in the recent past, where it is undisputed that the motel has not been occupied by anyone or operated by the defendants since it was shuttered by the City. The City's attempt to tar the plaintiffs with the stain of nuisances past does not establish any basis for entry of judgment as a matter of law requiring the abatement of any current condition at the property that could be construed as a nuisance under the present regulations, where the motel plainly does not constitute a hazard to anyone, since no persons reside or are present there. The City also does not allege in its complaint that any current accumulation of filth or blight exists on the grounds of the motel, and it apparently does not dispute the plaintiffs' contention that any such accumulations were removed soon after the February closure. The City therefore has failed to put forth any substantial facts to show that a hazard-type nuisance exists, and they certainly are not entitled to judgment as a matter of law on Count II of their complaint.

### B. Criminal Activity

The City's evidence of 30 police runs dispatched to the vicinity of the plaintiffs' property over a six-month period do not establish that the property presently has been used or permitted to be used by anyone, let alone the plaintiffs, for any of the dangerous criminal purposes that qualify a property as a nuisance under Michigan Compiled Laws § 600.3801(1). That statute outlines a host of serious crimes, but none of the petty misdemeanor citations for disorderly conduct, trespass, and traffic violations that prompted police encounters at the property establish that any of the dangerous criminal activities listed in the statute have been hosted there.

The City relies heavily on its summary of 45 police runs to establish the contrary proposition, but a reading does not sustain that position. Six of those reports were summarized with descriptions

that state nothing more than "misc." or "suspicious persons," and with details that indicated only that when officers arrived, the area was "all clear." Six other reports indicated that they were for traffic violations, which apparently were unrelated to the property and merely occurred near the property.

Fourteen of the reports indicated that a single individual, Sheilmama Hunter, was spotted by officers passing by or during routine checks of the property and was warned or cited for violating a condition of her probation that prohibited her from being in or around the property. Most of the citations were for trespass, but report number 7 also indicated a citation for possession of drug paraphernalia.

Six other reports indicated that another individual, Lawrence Dixon, was warned to leave and on several occasions cited for trespass or disorderly conduct after he was found on the property by police.

Report number 34 also stated that several persons who were in the company of Lawrence Dixon (noted above) were cited for disorderly conduct or trespass, and when officers arrived they were told by a store clerk that none of the persons were allowed in the store.

The first listed report, from March 8, 2017, stated that Dixon assaulted a clerk at the store and was arrested. The final report, from September 4, 2017, indicated that a clerk at the store named Al-Jason Hindo (possibly the property owner's son) had assaulted Dixon by throwing bleach at him.

Report number 5 stated that police were called by a store manager who wanted a person removed.

Report number 8 indicated that "suspicious persons" were reported standing inside the store, but upon inquiry it turned out that they were three people whom the store clerk allowed to stand inside to avoid the rain while they were waiting for a ride.

Report number 9 recited that an officer saw a person named Joseph Clark sitting outside the store and a neighboring business and the officer told Clark to leave the area and go home.

Report number 12 declared that a person was found sitting in the alley behind the store without pants on.

Reports 17 and 18 indicated that on May 4, 2017, officers saw persons entering and leaving one of the rooms of the hotel and they told the City's building enforcement department the room should be boarded up; on May 11, 2017 officers returned and spoke to store employees who told them that the motel had been shuttered by the City and officers would have to deal with the trespassers. The officers then entered the room and found three persons inside, along with some crack pipes. The persons were cited and released and the drug paraphenalia was confiscated and destroyed.

Report number 23 stated that an officer observed a man urinating against a wall of the store and arrested him for public urination and possession of crack cocaine.

Report number 24 stated that a person reported to police that several persons approached him and tried to sell him drugs while he was standing outside the store.

Reports 20 and 25 indicated that suspects were spotted by officers near the store and detained because the officers knew they had outstanding warrants.

Finally, report number 26 indicated that an elderly person needed assistance and an ambulance was called.

The only statutory provision even obliquely implicated by the reports is distribution of controlled substances, and the reports concerning that activity indicate only that citations were given for simple possession by individuals who were encountered somewhere in the vicinity of the

property, or who were unlawfully trespassing there without the owners' permission. None of the records submitted by the City identify anyone associated with the property who was involved in those petty drug offenses, and the reports, so far as they go, do not indicate that anyone ever was convicted for any of the supposed minor possession offenses. The most serious of the reports that in any way implicated the owners or operators of the property concerns an alleged assault by a store clerk on a person who repeatedly was warned by police and the store manager to stay away from the property, and that event does not implicate any of the specific crimes enumerated in the statute.

The City therefore has failed to come forth with sufficient evidence to warrant judgment as a matter of law in its favor on its state law nuisance abatement claim in Count I, premised on the use of the property for ongoing criminal activity.

The City's motion for summary judgment will be denied.

## IV. Plaintiffs' Motion to Dismiss Counterclaim

The plaintiffs contend that the City's counter-claim for nuisance abatement must be dismissed because the claim in Count I for nuisance abatement based on illegal conduct by persons on the property is untimely as it was not filed within 90 days after the last act or violation that allegedly constituted a nuisance. The City responds that the nuisance is ongoing, in particular due to the 30 police reports of various offenses by persons on or around the property, including, in one case, a felonious assault by the property owner's son, who threw bleach at a customer outside the store. However, as noted above, the various petty offenses described in the police reports do not satisfy the nuisance definition in Michigan Compiled Laws § 600.3801(1). And a single incident — a trespasser's use of a padlocked motel room in possession of drug paraphenalia, or an assault with bleach at the party store — does not establish that the property was "used for" or "used to

facilitate" drug trafficking or "armed violence in connection with the unlawful use of a firearm or other dangerous weapon." *Id.* § 600.3081(c), (g).

The plaintiff also argues that the City's claim in Count II for enforcement of the zoning ordinance cannot be maintained in this Court because the pertinent statute requires that injunctive proceedings to enforce the ordinance be filed in the state circuit court. The City counters that the zoning ordinance counter-claim is properly in this Court because it is a compulsory counter-claim in a case that was removed to federal court, where the claim arises from the same transaction or occurrence and adjudication of it does not require adding any party over whom the Court cannot obtain jurisdiction. The City also notes that its ordinance does not limit enforcement proceedings to exclusive venue in the state circuit court, because the ordinance allows the City also "to exercise any other available remedies."

Inkster's city ordinance authorizes several city officials and their "duly authorized representatives . . . to make complaint against any alleged violator hereunder [and] the City Manager, upon approval by the City Council, shall be permitted to file injunctive proceedings in the circuit court or to exercise any other available remedies including criminal prosecution to abate a nuisance which he may deem necessary, each and all of said power and remedies being cumulative and not exclusive." Inkster City Ordinance § 95.03. The counterclaim does not indicate that the abatement action was authorized according to the ordinance, and it was not filed in the "circuit court." But there is no requirement to read the ordinance in such a restrictive manner.

Nonetheless, as discussed above, the City has not put forth any evidence to sustain its nuisance claims, which are insufficiently pleaded to even describe any plausible claim for nuisance abatement. Moreover, because the federal claims all are dismissed, there is no good reason to

exercise supplemental jurisdiction over a claim to abate a nuisance, which essentially is a local matter.  *See* 28 U.S.C. § 1367(c)(3).

## V.  Conclusion

Although the Court has subject matter jurisdiction over the plaintiffs' complaint, that pleading fails to state claims upon which relief may be granted.  The City of Inkster has not shown that it is entitled to summary judgment on its counterclaim as a matter of law, and the counterclaim fails to state a claim based on the nuisance abatement statute and ordinance for which relief may be granted.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss the complaint [dkt. #17] is **GRANTED**.

It is further **ORDERED** that the defendant's motion for summary judgment on its counterclaim [dkt. #18] is **DENIED**.

It is further **ORDERED** that the plaintiffs' motion to dismiss the counterclaim [dkt. #23] is **GRANTED**.

It is further **ORDERED** that the complaint and counterclaim are **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 21, 2018

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 21, 2018.

s/Susan Pinkowski
SUSAN PINKOWSKI